Weygandt, C. J.
As observed by counsel for the mother, the confusion engendered by this bitter prolonged controversy is illustrated by the statement in the majority opinion of the Court of Appeals that it was attempting to review the order entered by the Ju *588 venile Court on April 29,1952, requiring the Woods to deliver the child to the mother within one week. A careful study of the records discloses that the Juvenile Court did approve such a journal entry on that date hut subsequently an amended entry was substituted therefor on May 8, 1952, as above indicated. No appeal was attempted from either of those orders, and hence, as observed by the dissenting member, the Court of Appeals was without jurisdiction to review either. But this error becomes unimportant in view of the opinion hereinafter expressed.
Stripped of the procedural confusion, the sole substantive question of law presented to this court for consideration is a simple one. Fortunately this court is not required to concern itself with the factual questions whether the child is neglected or dependent or the mother a fit person to have custody of her child. The question of law is whether the Juvenile Court lacked jurisdiction to determine the right of custody of the child in view of the decision that the child was neither neglected nor dependent. The answer is found in the following provisions of Section 1639-16, General Code (Section 2151.23, Revised Code):
“(a) The [Juvenile] Court shall have exclusive original jurisdiction under this chapter or under other provisions of the General Code:
“1. Concerning any child who is (1) delinquent, (2) neglected, (3) dependent, crippled, or otherwise physically handicapped.
“2. To determine the custody of any child not a ward of another court.
“3. To determine the paternity of any child alleged to have been born out of wedlock and to provide for the support of such child, subject to the concurrent jurisdiction of other courts as provided by law.”
Reduced to its lowest terms, the precise question is whether subsection two is dependent on subsection *589 one. Restated in other words, is a Juvenile Court invested with jurisdiction to determine the custody of a child without finding first that the child is delinquent, neglected or dependent? Or, to what extent, if at all, are the three subsections interdependent? If the second is dependent on the first, is the third likewise dependent on it? This would mean that the court would lack jurisdiction to determine the paternity of any child alleged to have been born out of wedlock unless it is held first that the child is delinquent, neglected, crippled, or otherwise physically handicapped. It seems inconceivable that by mere implication the General Assembly should intend to so limit the jurisdiction of the court to determine the important question of paternity. And if the first subsection is not to be regarded as a limitation on the third, is it logical to contrive a distinction between the second and third and thereby hold that the first subsection is a limitation on the second but not on the third? As this court has repeated in numerous cases involving. statutory construction, the question is not what did the General Assembly intend to enact but what is the meaning of that which it did enact. Slingluff v. Weaver, 66 Ohio St., 621, 64 N. E., 574.
But it is urged that the instant cases are controlled by the following pronouncement of this court in the syllabus in the case of Paddock v. Ripley, 149 Ohio St., 539, 80 N. E. (2d), 129:
‘‘ The Juvenile Court has jurisdiction of a child only if such child is found to be delinquent, neglected or dependent. The Court of Common Pleas has jurisdiction to issue a writ of habeas corpus to a father who is a fit person for the custody of a child which is neither delinquent, neglected nor dependent.”
Unfortunately that syllabus was not narrowed to the particular factual setting of that case. One of the contentions was that a father was not entitled to the rem *590 edy of habeas corpus in the Court of Common Pleas to obtain custody of his minor daughter because exclusive jurisdiction to determine that question had been lodged in the Juvenile Court by the provisions of Section 1639-1 et seq., General Code (Section 2151.01 et seq., Revised Code). That question is not involved in the instant cases. The question here is not exclusiveness of jurisdiction but whether the Juvenile Court did have jurisdiction to determine custody after first finding the child was neither dependent nor neglected. In the Paddock case the relationship of the three subsections of Section 1639-16, General Code, supra, was not mentioned.
Hence, this court is of the view that the majority of the Court of Appeals was in error in holding that under the circumstances the Juvenile Court was without jurisdiction to award the custody of the child to the mother and to hold the Woods in contempt of court for failure to deliver the child to the mother in conformity with the court order. The judgments of the Court of Appeals are reversed and those of the Juvenile Court are affirmed.

Judgments reversed.

Middleton, Hart, Zimmerman, Stewart and Lamneck, JJ., concur.